## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

LOREN BOWEN,                                                          CASE NO.:

    Plaintiff

    **v.**                                                   **PLAINTIFF DEMANDS**
                                                             **A TRIAL BY JURY**

QUEST DIAGNOSTIC INCORPORATED,

    Defendant.

_____/

### COMPLAINT

Plaintiff, Loren Bowen, by and through his counsel, Derek Smith Law Group, PLLC, hereby complains of the Defendant Quest Diagnostics Incorporated, and alleges as follows:

### NATURE OF CASE

1.   This is an action for damages and other relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, as amended ("Title VII"); Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) ("ADA"); and the Florida Civil Rights Act of 1992, Section 760.10 *et seq.* ("FCRA"), and seeks damages to redress the injuries Plaintiff has suffered as a result of being discriminated against, sexually harassed, and retaliated against by his employer due to his sex/gender, sexual orientation, and disability and for complaining of the ongoing harassment and discrimination.

### JURISDICTION AND VENUE

2.   This is an action for monetary damages and all other appropriate relief as deemed by the court, pursuant to Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) ("ADA") and FCRA.

1

3.   This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII of the Civil Rights Act of 1964, Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) ("ADA") and FCRA.

4.   Venue is proper in this district pursuant to 28 U.S.C. §1391(b) based upon the fact Defendants were located in this judicial district, and a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein occurred in this district. Plaintiff was employed by Defendant within Miramar, Florida in Broward County. Additionally, the events took place in Broward County.

## PROCEDURAL PREREQUISITES

5.   Plaintiff has complied with all statutory prerequisites to file this action.

6.   On or about September 22, 2017 Plaintiff dual-filed charges with the EEOC and FCHR against Defendant as set forth herein.

7.   An EEOC filing automatically operates as a dual Florida Commission on Human Relations ("FCHR") filing.

8.   On or about July 26, 2019, the EEOC issued Plaintiff a Right to Sue Letter.

9.   This action is being commenced within ninety (90) days of receipt of the EEOC Right to Sue Letter.

## PARTIES

10.  At all material times, Plaintiff Loren Bowen (hereinafter referred to as "Plaintiff" or "Bowen") is an individual gay, male who is a resident of the State of Florida and resides the Broward County.

11. At all material times, Defendant QUEST DIAGNOSTICS INCORPORATED (hereinafter "Defendant" and/or "QUEST") is a foreign Delaware For-Profit Business Corporation authorized under the laws of the State of Florida with offices in Broward County, Florida.

12. Defendant Quest is an employer as defined by all laws under which this action is brought and employs the requisite number of employees.

### STATEMENT OF FACTS

13. Defendant Quest hired Plaintiff on or about March 3, 2014 as a "Logistics Supervisor."

14. At the outset of his employment, Defendant Quest's management team, informed Plaintiff him that he was to report directly to "Logistics Manager," Karen VanDoren.

15. Immediately after beginning his employment with Defendant Quest, Mr. Bowen's supervisor, VanDoren, began to discriminate and harass Mr. Bowen based on his gender and sexual orientation.

16. By means of example and not meant to be an exhaustive list, VanDoren would publicly humiliate and degrade Mr. Bowen by calling him "Becky."

17. Mr. Bowen would at all times remind VanDoren that his name was "Loren" but VanDoren would ignore his corrections and continue to disparage Mr. Bowen.

18. Despite the ongoing mistreatment, on or around January 2, 2015, Defendant Quest provided Mr. Bowen with his 2014 Performance Document Review ("PDR") wherein he achieved an overall rating of "Achieves Expectations."

19. In or around July 2015, having hit his breaking point with VanDoren's efforts to humiliate him, Mr. Bowen approached VanDoren. Mr. Bowen complained to VanDoren about the mistreatment and explicitly requested that she refrain from calling him "Becky."

20.    On or around August 6, 2015, in retaliation for Mr. Bowen's above complaint, Defendant Quest placed Mr. Bowen on a Performance Improvement Plan ("PIP"). Despite receiving notice of the PIP in early August 2015, VanDoren did not provide Mr. Bowen with an actual "plan" or justification for the PIP until November 12, 2015.

21.    Upon information and belief, Between August and November 2015, VanDoren approached Defendant Quest's Senior Employee Relations Specialist, Dawn Ramirez, to "develop" the PIP. Ms. Ramirez strongly urged VanDoren to refrain from issuing the PIP.

22.    During their conversations, VanDoren continued to humiliate and discriminate against Mr. Bowen while speaking with Ms. Ramirez, referring to him as being "light in the loafers" (Slang or innuendo for being gay; translated to mean he is "light" as a fairy and about to fly away).

23.    On or around November 12, 2015, VanDoren met with Mr. Bowen personally to discuss the PIP and steps she felt were necessary to achieve success.

24.    Mr. Bowen again expressed his concerns and complained to VanDoren that her comments were inappropriate and made him uncomfortable.

25.    On or around January 22, 2016, having applied all the "corrections" proposed in the PIP, Mr. Bowen and VanDoren signed off on the PIP as being complete.

26.    In or around the winter of 2016, after Mr. Bowen completed the PIP, VanDoren reinstituted her campaign of belittling Mr. Bowen, again insisting on referring to him as "Becky."

27.    At all times, Mr. Bowen insisted that his name was "Loren" and asked that VanDoren refer to him by his proper/legal name.

28.    On or around March 29, 2016, Defendant Quest provided Mr. Bowen with his 2015 PDR in which he received an overall rating of Successful Performance.

29. Mr. Bowen, having already experienced retaliation as a direct result of complaining to VanDoren attempted to ignore her unlawful comments and harassment, instead focusing on ensuring he was performing his job.

30. Despite his efforts to ignore her, VanDoren's mistreatment was relentless and ultimately, in or around November 2016, Mr. Bowen again approached VanDoren to complain, requesting that she refer to him by his name and stop harassing him.

31. On or around November 30, 2016, Mr. Bowen's partner, Mr. Osborn, was struck by a vehicle while riding his bicycle.

32. Due to his numerous injuries, Mr. Bowen was working effortlessly to ensure he could help his partner receive all necessary medical attention to ensure a speedy recovery.

33. On or around December 13, 2016, Mr. Bowen spoke VanDoren and requested that he be permitted to leave work early to take Mr. Osburn to a doctor appointment. VanDoren responded by questioning Mr. Bowen, insisting that he had an unprecedented amount of unexpected TOP.

34. Mr. Bowen explained that he was having personal issues and dealing with medical problems, and asked if he should contact CIGNA to arrange for FMLA and/or EAP to assist. Rather than instructed Mr. Bowen about options available to him, VanDoren informed Mr. Bowen that contacting CIGNA was unnecessary.

35. On or around December 20, 2016, Mr. Osburn physically assaulted Mr. Bowen. The following day, Mr. Bowen left work early in order to properly notify the authorities and obtain a restraining order to further ensure his safety.

36.     On or around January 3, 2017, upon returned from a previously scheduled and approved vacation leave, VanDoren sent Mr. Bowen an email requesting that Mr. Bowen join the Director of Logistics for the Southern Region, George Lloyd, and her on a conference call.

37.     During the call, Mr. Lloyd and VanDoren informed Mr. Bowen that Mr. Osburn had sent a slanderous email to the Quest Diagnostic general email box pertaining to Mr. Bowen. Mr. Bowen explained the horrendous inaccuracies and ended the call believing this attack was behind him.

38.     Following his return from vacation, the retaliation and discrimination exponentially increased.

39.     Mr. Bowen was made aware that the email from Mr. Osburn was being passed around management without his knowledge, including to the Vice President of Logistics, Bob Serveni.

40.     Additionally, on or around January 17, 2017, Mr. Bowen interviewed for an open Manger of Fleet Operations positions. Despite a strong interview and warm reception, Mr. Bowen was unceremoniously and without explanation denied the promotion for which he was well qualified.

41.     On January 24, 2017, VanDoren provided Mr. Bowen with a "Summary of Discussion for Attendance," previously dated December 23, 2016, wherein she referenced the Non-Exempt Employee Attendance Policy, despite being fully aware that Mr. Bowen was characterized as an "Exempt Employee."

42.     On January 25, 2017, Mr. Bowen formally contact the HRSC to make a complaint of Discrimination and Retaliation against VanDoren. Defendant Quest assigned Mr. Bowen's claim to an Employee Relations Specialist II, Walter Tesh.

43.  On January 26, 2017, VanDoren emailed Mr. Bowen wherein she made it clear she was aware of Mr. Bowen's complaint and was instructed to revise her inaccurate Summary of Discussion.

44.  Rather than withdraw her improper and retaliatory write up, VanDoren increased her hostility by highlighting Mr. Bowen's January 20, 2017 early departure from work. VanDoren was fully aware of Mr. Bowen's reason for leaving early that date, as Mr. Bowen required treatment at Urgent Care for Cellulitis.

45.  On or around February 3, 2017, Mr. Tesh marked Mr. Bowen's claim as "closed," explaining that he "discussed Loren's concerns with PS Manager Karen VanDoren as requested. Debriefed Loren on the outcome of the conversation".

46.  At no time did Defendant Quest or its representatives conduct a proper investigation into Mr. Bowen's complaints of discrimination or take any corrective action.

47.  As a result, VanDoren's discrimination and retaliation only further escalated.

48.  On or around February 28, 2017, Defendant Quest issued Mr. Bowen his 2016 PDR wherein he was rated as "Development Needed" in seven out of ten possible categories. Despite this review, Mr. Bowen was not placed on a PIP, provided a formal write up, or required to receiving a mid-year review/evaluation.

49.  On or around March 3, 2017, concerned by the actions by VanDoren, Mr. Bowen requested a meeting with Mr. Lloyd. During this meeting, Mr. Lloyd redirected the conversation and began accusing Mr. Bowen of recording him, demanding that Mr. Bowen shut off his phone before they could speak. Mr. Bowen reluctantly obliged and proceeded to again rehash his concerns about VanDoren and her years discriminatory, harassing and retaliatory behavior.

50.     As the meeting concluded Mr. Bowen informed Mr. Lloyd that he intended to file an additional complaint with HRSC. Mr. Lloyd proceeded to threaten Mr. Bowen, insisting that he was "good friends" with the HRSC Director, sarcastically quipping, "good luck" as Mr. Bowen left the room.

51.     On or around March 8, 2017, Mr. Bowen called HRSC and filed a second complaint regarding the ongoing retaliation and requested the matter be immediately escalated to the attention of the HRSC Director. In his complaint, Mr. Bowen outlined specific allegations including but not limited to the following: (1) Inappropriate disciplinary action for attendance issue; (2) Discriminatory language used by Supervisor Karen VanDoren; (3) Hostile workplace created by Supervisor Karen VanDoren; (4) Retaliation due to a previous discrimination complaint; (5) Inappropriate Performance Appraisal; (6) Active stress/depression/anxiety/headaches and other physical complaints resulting from workplace dynamics.

52.     On or around March 14, 2017, in retaliation for his second complaint to HRSC, VanDoren provided Mr. Bowen with an Individual Development Plan.

53.     Mr. Bowen became so overwhelmed by the clear acts of retaliation that were being disregarded by Defendant Quest that on March 16, 2017 and March 17, 2017, Mr. Bowen became physically sick and took two personal days.

54.     Immediately upon returning to work, VanDoren sought out Mr. Bowen and demanded that he immediately provide her with a TOP Borrowing Form.

55.     On or around March 20, 2017, Defendant Quest's HRSC closed Mr. Bowen's second complaint, having never raised the matter to the Director and despite failing to do a proper investigation. No corrective action was taken as a result of Mr. Bowen's second complaint.

56.   On or around March 23, 2017, Mr. Bowen's stress became so unbearable that he sought out medical attention. As a result, Mr. Bowen's doctor insisted that Mr. Bowen take immediate leave from work and remain on leave until cleared to return.

57.   Mr. Bowen's doctor diagnosed him with severe depression and anxiety from which he was suffering both physical and psychological symptoms, including but not limited to anxiety attacks, headaches, nausea, and diarrhea.

58.   Mr. Bowen completed the proper paperwork through CIGNA and ensure prompt responses when any additional documents were required on him from Quest/Cigna.

59.   On or around July 6, 2017, Bill Cattoge contacted Mr. Bowen requesting that he immediately contact Plaintiff to discuss his return to work. Mr. Bowen promptly responded that his doctor requested he remain out through August 4, 2017. Mr. Bowen explained that he had contacted Cigna and requested an extension of his medical leave/ADA Accommodations.

60.   On July 6, 2017, Mr. Cattoge sent Mr. Bowen a letter, informing Mr. Bowen that his FMLA had "run out" and that Defendant Quest was moving forward with replacing Mr. Bowen.

61.   On July 7, 2017, Mr. Bowen contacted Mr. Cattoge explained that he was ready to return to work. Mr. Bowen explained that he would need a minimal accommodation where he requested his schedule be adjusted to permit him 2.5 hours per week wherein he could continue receiving medical treatment and attend doctors appointments. Mr. Bowen expressed that he would provide documentation so that Defendant Quest could verify his appointments.

62.   Mr. Cattoge explained that he needed to speak with Mr. Lloyd regarding the request and that he would call Mr. Bowen back immediately.

63.  Shortly thereafter, Mr. Cattoge contact Mr. Bowen, advising him that Mr. Lloyd had approved the accommodation. Mr. Cattoge further explained that Mr. Bowen's hours were to be shifted from 7:30AM-4:30pm shifts, to 3:00PM-12:00AM shifts.

64.  Defendant Llyod's proposed shift schedule for Mr. Bowen was outlandish and in clear retaliation as no Logistics Supervisor worked a schedule remotely similar to the one proposed.

65.  Despite the outlandish schedule, Mr. Bowen agreed, fearful that he would lose his job and agreed to return to work on July 18, 2017.

66.  On July 17, 2017, Mr. Bowen returned to work without incident, hopefully that he would be able to move forward and focus on his work.

67.  On or around July 19, 2017, Defendant Quest issued Mr. Bowen a PIP/Written Warning as a result of incidents that occurred while he was on leave and in September 2016.

68.  Mr. Bowen's symptoms which were previously under control, rapidly exasperated as a result of the clear retaliation and efforts to undermine Mr. Bowen. Mr. Bowen suffered from numerous worsening physical ailments including headaches, diarrhea, anxiety and depression.

69.  On August 4, 2017, Mr. Bowen met with his doctor who, upon listening to the events transpiring since his return to work, immediately removed Mr. Bowen from work again through September 1, 2017.

70.  On or around August 4, 2017, Defendant Quest notified Mr. Bowen that his position was being replaced effective September 13, 2017.

71.  On or around August 15, 2017, Mr. Bowen contacted Mr. Cattoge and informed him of the ongoing harassment which persisted in the days immediately following his return to which,

explaining that it was this mistreatment which resulted in his need to return to medical leave.

72. On or around October 31, 2017, Mr. Bowen informed Mr. Cattoge that he had again been cleared to return to work effective November 6, 2017.

73. On or around November 22, 2017, Defendant Quest wrongfully terminated Mr. Bowen.

74. Defendant Quest wrongfully terminated Mr. Bowen because of his gender/sex, sexual orientation, disability and in retaliation for his ongoing complaints of discrimination, harassment and requests for accommodation.

75. At all times material, Defendant's supervisors/management acted with deliberate indifference to the sexual harassment and hostile work environment; and retaliation thereof.

76. The above are just some examples, of some of the discrimination and retaliation to which Defendant subjected Plaintiff.

77. The Defendant exhibited a pattern and practice of not only discrimination but also retaliation.

78. That as a result of Defendants' conduct and comments, Plaintiff was caused to sustain serious and permanent personal injuries, including permanent psychological injuries.

79. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

80. As a result of Defendant's discriminatory and intolerable treatment of Plaintiff, Plaintiff suffered and continues to suffer severe emotional distress.

81. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other

compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

82.    As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Defendant.

### AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII

83.    Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 13 to 82.

84.    Plaintiff claims a continuous practice of sexual harassment and a hostile work environment and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

85.    On a daily and consistent basis throughout the course of his employment, Plaintiff's supervisor made unwelcomed sexual jokes and comments relating to Plaintiff's gender/sex and sexual orientation.

86.    Title VII states in relevant parts as follows: § 2000e-2. *[Section 703]*(a) Employer practices It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

87.    Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against Plaintiff because of his gender/sex and sexual orientation.

88.    At all times relevant, Defendant, by and through its employees, intended to unlawfully discriminate against Mr. Bowen in the terms and conditions of his employment because of

his sex/sexual orientation and Defendant did unlawfully discriminate against Mr. Bowen in the terms and privileges of his employment because of his sex/sexual orientation in violation of Title VII.

89.   Mr. Bowen was subject to unwelcome, offensive and harassing sexually discriminatory conduct during his employment with QUEST and this conduct was directed to and perpetuated upon Plaintiff because of his sex/sexual orientation.

90.   QUEST was notified about and was otherwise aware of the sexually harassing and discriminatory conduct directed at Mr. Bowen by Defendant's employees and QUEST failed to take appropriate corrective action.

91.   The sexually harassing and discriminatory directed at Mr. Bowen was sufficiently severe and pervasive so as to unreasonably interfere with Mr. Bowen's physical and/or psychological health, work performance and to create and intimidating, hostile and offensive working environment.

92.   As a direct and proximate result of Defendant's intentional discriminatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

93.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

94.   Conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

95.   Plaintiff has been damaged by the illegal conduct of Defendant.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII

96.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 13 to 82.

97.   At all times relevant, Defendant's employees intended to unlawfully discriminate against Mr. Bowen in their terms and conditions of his employment in violation of Title VII because he opposed a practice made unlawful by Title VII and QUEST unlawfully discriminated against Mr. Bowen because of that opposition.

98.   At all times relevant, Mr. Bowen acted in good faith and with the objective and subjective belief that violations of Defendant's employees of Title VII had occurred.

99.   Plaintiff regularly insisted that his supervisor stop usually harassing and offense language when speaking with him and requested that they refrain from making any further discriminatory comments.

100.   Mr. Bowen reported the ongoing sexual harassment to Defendant Quest's management on multiple occasions to no avail.

101.   Defendant failed to properly investigate Plaintiff's complaints and failed to take appropriate corrective action.

102.   At all times material, Defendant Quest allowed the sexually harassing and discriminatory practices to continue in the work environment.

103.   At all times relevant, the unlawful discrimination by Defendant's employees against Mr. Bowen in the terms and conditions of her employment because she opposed a practice made unlawful by Title VII which would not have occurred but for that opposition.

104.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that

it shall be unlawful employment practice for an employer:

"(1) to … discriminate against any of his employees … because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

105.    Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq*. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of his opposition to the unlawful employment practices of Defendants.

106.    At all times relevant, Defendant's employees acted intentionally and with reckless disregard of Mr. Bowen's rights protected by Title VII.

107.    At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

108.    As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the Title VII, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

109.    Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the Title VII, warranting the imposition of punitive damages in addition to compensatory damages.

110.    Conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

111.   Plaintiff has been damaged by the illegal conduct of Defendant.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER
### THE AMERICANS WITH DISABILITIES ACT

112.   Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 13 to 82.

113.   Plaintiff claims Defendant Quest violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

114.   SEC. 12112. [Section 102] specifically states

 (a) General rule. - No covered entity shall discriminate against a qualified
individual with a disability because of the disability of such individual
in regard to job application procedures, the hiring, advancement, or
discharge of employees, employee compensation, job training, and other
terms, conditions, and privileges of employment.

115.   Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

116.   At all material times, Plaintiff was a qualified individual who's job performance was satisfactory.

117.   Defendant Quest violated the sections cited herein by failing to consider Plaintiff's requests for a reasonable accommodation, as well as discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of his disability and for having complained of discrimination.

118.   29 C.F.R. § 1630.2(o)(3) and (4) explains the term "**Reasonable Accommodations**"

stating:

(3) To determine the appropriate reasonable accommodation it may be necessary
for the covered entity to initiate an informal, interactive process with the individual
with a disability in need of the accommodation. This process should identify the
precise limitations resulting from the disability and potential reasonable
accommodations that could overcome those limitations.

(4) A covered entity is required, absent undue hardship, to provide a reasonable
accommodation to an otherwise qualified individual who meets the definition of
disability under the "actual disability" prong ( paragraph (g)(1)(i) of this section),
or "record of" prong ( paragraph (g)(1)(ii) of this section)…

119.   At all times relevant, Defendant Quest, by and through its employees, intended to

unlawfully discriminate against Mr. Bowen in the terms and conditions of his employment

because of his disability and Defendant did unlawfully discriminate against Mr. Bowen in

the terms and privileges of her employment because of his disability in violation of the

ADA.

120.   Defendant Quest violated Plaintiff's rights under the ADA by (i) discriminating against

Plaintiff regarding the conditions and privileges of employment because of his disability,

(ii) wrongfully terminating Plaintiff because of his disability, (iii) failing to consider

Plaintiff's requests for a reasonable accommodation, and (iv) because Defendant Quest

failed to engage in reasonable discussions.

121.   As a direct and proximate result of Defendant's intentional discriminatory conduct in

violation of the ADA, Plaintiff suffered and will continue to suffer damages including

lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of

dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-

pecuniary losses.

122. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

123. Conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

124. Plaintiff has been damaged by the illegal conduct of Defendant.

## AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT

125. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 13 to 82.

126. At all times relevant, Defendant's employees intended to unlawfully discriminate against Mr. Bowen in their terms and conditions of his employment in violation of the ADA because he opposed a practice made unlawful by the ADA and Quest unlawfully retaliated against Mr. Bowen because of that opposition.

127. At all times relevant, Mr. Bowen acted in good faith and with the objective and subjective belief that violations of the ADA by Defendant Quest's employees had occurred.

128. Defendant failed to properly investigate Plaintiff's complaints and failed to take appropriate corrective action.

129. At all times material, Defendant allowed the discriminatory practices to continue in the work environment.

130. At all times relevant, the unlawful discrimination by Defendant's employees against Mr. Bowen in the terms and conditions of his employment because he opposed a practice made unlawful by the ADA which would not have occurred but for that opposition.

131.   SEC. 12203. [Section 503] states, "(a) Retaliation. - No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

132.   At all times relevant, Defendant's employees acted intentionally and with reckless disregard of Mr. Bowen's rights protected by the ADA.

133.   At all material times, the employer exhibiting discriminatory conduct against Plaintiff possessed the authority to affect the terms, conditions and privileges of Plaintiff's employment with the Defendant.

134.   As a direct and proximate result of Defendant's intentional retaliatory conduct in violation of the ADA, Plaintiff suffered and will continue to suffer damages including lost wages and benefits, severe emotional distress, mental anguish, suffering, loss of dignity, humiliation, embarrassment, loss of reputation, and other pecuniary and non-pecuniary losses.

135.   Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights under the ADA, warranting the imposition of punitive damages in addition to compensatory damages.

136.   Conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under federal law.

137.   Plaintiff has been damaged by the illegal conduct of Defendant.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER FCRA

138. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 13 to 82.

139. As a result of his gender/sex, sexual orientation, disability and his continued requests for an accommodation, Defendant Quest subjected and permitted it's employees to expose Plaintiff to discrimination and unlawful discharge.

140. Defendant Quest is prohibited under the FCRA from discriminating against Plaintiff because of his gender/sex, sexual orientation, and disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

141. Defendant violated the FCRA by unlawfully discharging and discriminating against Plaintiff based his gender/sex, sexual orientation and disability, of which the Defendant was fully aware of.

142. Defendant Quest violated Plaintiff's rights under the FCRA by (i) discriminating against Plaintiff regarding the conditions and privileges of employment because of his gender/sex, sexual orientation, and disability, (ii) wrongfully terminating Plaintiff because of his disability, (iii) failing to consider Plaintiff's requests for a reasonable accommodation, and (iv) because Defendant Quest failed to engage such discussions.

143. Conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under state law.

144. Plaintiff has been damaged by the illegal conduct of Defendant.

### AS A SIXTH CAUSE OF ACTION FOR RETALIATION UNDER FCRA

145. Plaintiff realleges and adopts, as if fully set forth herein, the allegations stated in paragraphs 13 to 82.

146. At all times relevant to this action, Plaintiff was and is a gay, disabled man.

147. As a result of his complaints of discrimination and his continued requests for an accommodation, Defendant's retaliated against Plaintiff by further exposing him to discrimination and unlawful discharge.

148. At all material times, Plaintiff opposed and complained of Defendant's unlawful conduct.

149. Defendants are prohibited under the FCRA from discriminating against Plaintiff because of his sex/gender, sexual orientation, and disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

150. After Plaintiff opposed and complained about Defendant's unlawful conduct, Defendant Quest, by and through its agents, retaliated against Plaintiff by providing Plaintiff with false write ups and ultimately wrongfully terminating Plaintiff.

151. Defendant violated the FCRA by retaliating against the Plaintiff in the terms and conditions of his employment and has denied the Plaintiff the ability to have continued employment in retaliation for her lawfully having engaged in statutorily protected activity and as a result of his complaints of discrimination.

152. Conduct of Defendant and/or its agents deprived Plaintiff of his statutory rights guaranteed under state law.

## DEMAND FOR JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all

emotional distress and economic damages, punitive damages, liquidated damages, attorneys' fees,

costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: Miami, Florida
      October 24, 2019                    DEREK SMITH LAW GROUP, PLLC
                                        *Attorneys for Plaintiff*

                                        Caroline H. Miller, Esq.
                                        Caroline@dereksmithlaw.com
                                        701 Brickell Avenue, Suite 1310
                                        Miami, FL 33131
                                        Tel: (305) 946-1884
                                        Fax: (305) 503-6741